COMMONWEALTH *vs.* LIBERATORE FEDERICO.

No. 94-P-1568.

Norfolk. April 16, 1996. - June 27, 1996.

Present: WARNER, C.J., ARMSTRONG, & KASS, JJ.

Further appellate review granted, 423 Mass. 1111 (1996).

*Evidence,* Expert opinion, Credibility of witness, Fresh complaint. *Witness,*
    Credibility, Corroboration. *Practice, Criminal,* Plea, Instructions to jury.

At the trial of indictments for rape of a child under the age of sixteen and
    indecent assault and battery on a child under the age of fourteen, the
    testimony of the Commonwealth's expert witnesses in response to hypo-
    thetical questions mirroring the facts of the case impermissibly intruded
    on the jury's role of assessing the credibility of the complainants and
    constituted reversible error. [618-619]
The judge conducting a plea colloquy with a defendant charged with sexual
    abuse of children correctly informed the defendant that one possible
    consequence of his plea was that, as was then applicable, the Com-
    monwealth could seek to have him declared a sexually dangerous person.
    [619]
At the trial of indictments for sexual abuse of children, any error in the
    admission of testimony of a fresh complaint witness, the mother of the
    complainants, that was an indirect comment on the credibility of one of
    the complainants was harmless, in view of all the evidence and the
    judge's final instructions. [619-621]
At the retrial of indictments for sexual abuse of children the judge should
    give fresh complaint instructions to the jury at the time each fresh com-
    plaint witness testifies. [621-621]
At a criminal trial, no error or substantial risk of a miscarriage of justice
    arose from the judge's instructions to the jury on fresh complaint
    testimony. [621-622]

INDICTMENTS found and returned in the Superior Court
Department on May 11, 1988.

The cases were tried before *Suzanne DelVecchio,* J., and a
motion for a new trial was heard by her.

*Maxine Sushelsky* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the
Commonwealth.

WARNER, C.J. A Superior Court jury found the defendant guilty of seven counts of rape of a child under sixteen years of age and three counts of indecent assault and battery on a child under the age of fourteen. The defendant appeals his convictions and the denial of his motion for a new trial, contending that the judge erroneously allowed two experts improperly to bolster the credibility of the complainants' claims of sexual abuse. He further argues that the judge impermissibly interfered with the plea agreement, that the judge erred when she permitted two witnesses to comment on the credibility of one complainant, and that the judge's instructions on fresh complaint testimony were deficient. We reverse for the reasons discussed below.

The case was scheduled for trial in December, 1988. After jury impanelment, the defendant offered to change his plea to guilty in exchange for a sentencing agreement agreed upon by both parties. During the plea colloquy, the judge informed the defendant that if he pleaded guilty, the Commonwealth could seek to have him declared a sexually dangerous person, and the defendant then withdrew his guilty plea.

At trial, the complainants, Stephenie and Jennifer, were ages 16 and 19. The alleged abuse had occurred over the previous six years when the children lived with the defendant, who is neither the biological nor the adoptive father of Stephenie and Jennifer, but who was married to their mother.

Jennifer and Stephenie testified in detail at trial about sexual acts performed on them by the defendant. A detective, a police officer, and the children's mother all testified as fresh complaint witnesses for the Commonwealth. In addition, the Commonwealth presented the testimony of two experts, Dr. Jan Paradise, a pediatrician, and Dr. Renee Brant, a child psychiatrist, neither of whom had treated the children. When presented with a series of hypotheticals that mirrored Stephenie's and Jennifer's complaints of sexual abuse, Dr. Paradise testified that such complaints were not inconsistent with medical examinations that revealed no physical trauma to genital areas. Dr. Brant was also asked a series of hypothetical questions with facts that mirrored the complainants' behavior.[1] She opined that the behavior described was consistent with children who have had sexual relations with an adult.

---

[1] The Commonwealth claims that the defendant waived his right to appeal the admissibility of Dr. Paradise's testimony by raising it for the first time in his reply brief. We are not persuaded. The defendant did not have

1. *Expert testimony.* The defendant argues that the testimony of the two expert witnesses impermissibly intruded on the jury's role of assessing the credibility of the complainants. In *Commonwealth* v. *Perkins,* 39 Mass. App. Ct. 577, 584 (1995), we reviewed the admissibility of similar testimony given by Dr. Brant and Dr. Paradise and concluded, "testimony in response to [questions whose components mirrored the underlying facts of the case] so closely approached an assessment of the credibility of each witness that it was tantamount to an endorsement of the credibility of the complaining child witness. Accordingly, its admission was error." Our holding in *Perkins* controls this case and requires us to conclude that there was error.

Defense counsel properly objected to the testimony of Dr. Paradise and Dr. Brant.[2] We, therefore, consider whether the error likely made no difference in the judgment. *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994). The complainants' allegations were the only evidence against the defendant. The jury's assessment of their credibility, therefore, was critical to the defendant's conviction, and the expert

the benefit of *Commonwealth* v. *Perkins,* 39 Mass. App. Ct. 577 (1995), at the time he filed his initial brief. The defendant preserved the issue at trial (see n.2 *infra*) and raised the issue in his motion for a new trial. Under these circumstances, we will address the argument. Compare *Commonwealth* v. *D'Agostino,* 421 Mass. 281, 286 (1995).

[2]Defendant's counsel objected during voir dire to the testimony of Dr. Paradise stating, "I know that this testimony is invading the province of the jury. . . . I believe that this just goes to credibility of witnesses, which is the jury's province. . . . I object on that ground that this testimony [not] be allowed." At trial, defense counsel objected after the first hypothetical posed to Dr. Paradise. In overruling his objection, the judge told him that his objections were already on the record and that they were preserved. During the voir dire examination of Dr. Brant, defense counsel simply stated that he did not "want to waive any other objections [he had] to calling this witness . . . ab initio." At trial, defense counsel only objected to the first two hypothetical questions posed to Dr. Brant, but did not state his reasons.

At a minimum, the issue of the admissibility of Dr. Paradise's testimony was preserved for appeal. While ideally the objections to Dr. Brant's testimony should have been as explicit as those to Dr. Paradise's testimony, we conclude that taken in the context of defense counsel's earlier objections to the same type of testimony, the objection to Dr. Brant's testimony was sufficient because it served to alert the judge to the issue. See *Commonwealth* v. *Gee,* 36 Mass. App. Ct. 154, 159 (1994) (although not a model of clarity, defense counsel's objection to mug shot was adequate to alert judge to potential errors).

testimony most likely played a significant role in assessing that credibility.[3] We cannot conclude that the error was harmless. Compare *Perkins, supra* at 585 (finding a substantial risk of a miscarriage of justice when two complainants initially denied abuse, versions of abuse varied, and there was no evidence of physical injuries).

2. *Plea hearing.* The defendant claims that the judge's statement during the plea colloquy that the defendant could be declared a sexually dangerous person, interfered with his plea agreement, as it caused him to withdraw his guilty plea. Under Mass.R.Crim.P. 12(c)(3)(B), 378 Mass. 868 (1979), when a defendant intends to plead guilty to a charge, the judge must inform him of the possible consequences of his plea, including, as was then applicable, declaring the defendant a sexually dangerous person. Such a disclosure follows the well-established rule that requires a guilty plea to be accepted only with an affirmative showing that the defendant is acting voluntarily and understands the consequences of his plea. *Commonwealth* v. *Morrow*, 363 Mass. 601, 604 (1973). *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 (1982). The sexually dangerous persons statute, G. L. c. 123A, § 4, as in effect at the time of the defendant's trial, could have applied to him.[4] By informing the defendant that the Commonwealth could, regardless of whether it would, move to have the defendant classified as a sexually dangerous person, the trial judge properly followed the requirements of rule 12. There was no error.

3. *References to complainant's veracity.* The defendant argues that it was error for the judge to admit testimony of Stephenie and her mother, Marion, that commented on Stephenie's truthfulness. Stephenie, in response to the prosecu-

---

[3]For an illustrative hypothetical question, see appendix, *infra.*

[4]The statute, as appearing in St. 1985, c. 752, § 1, then read, "Upon the determination of guilt of a person in the superior court of a sexual offense, as defined in section one, the court may, on its own motion or upon motion of the commonwealth," cause the person to be examined to determine if he is a sexually dangerous person. General Laws c. 123A, § 1, includes in the definition of sexual offense, indecent assault and battery on a child under fourteen, rape of a child under sixteen with force, rape and abuse of a child under sixteen, and unnatural and lascivious acts with a child under the age of sixteen.

tor's question as to what she told her mother, stated, "I told her the truth." Marion, testifying as a fresh complaint witness, in explaining why she did not go to the police immediately, stated that she did not realize that Stephenie was telling her the truth until her daughter Jennifer told her that she also was abused by the defendant. Marion also testified about actions she took to keep her daughters and herself away from the defendant after she learned of the abuse. At the time of Marion's testimony, the judge gave no fresh complaint instruction. The defendant objected and moved to strike the testimony in each instance.

A witness cannot be asked to comment on the credibility of himself or another witness. *Commonwealth* v. *Montanino,* 409 Mass. 500, 504 (1991). *Commonwealth* v. *Powers,* 36 Mass. App. Ct. 65, 68 (1994). *Commonwealth* v. *Lorette,* 37 Mass. App. Ct. 736, 739 (1994), *S.C.,* 422 Mass. 1014 (1996). A witness's testimony is also inadmissible if it indirectly comments on another witness's credibility, regardless of the question posed. See *Commonwealth* v. *Montanino, supra* at 504; *Commonwealth* v. *Lorette, supra* at 739-740. In *Lorette,* the complainant's mother, in response to questions about possible fabrication of sexual abuse by her daughter, testified that her daughter's testimony "wasn't fabricated," that "everything just fit," and that her daughter "never once strayed" from her story. *Id.* at 738-739. In finding a substantial risk of a miscarriage of justice, we noted that the error of admitting testimony that was an indirect comment on the complainant's credibility was compounded by the fact that the mother was the prosecution's key witness and that there was no contemporaneous fresh complaint instruction. *Id.* at 739-741.

Stephenie's statement that she told her mother "the truth" was a colloquial use of the term and, taken in context, was no comment on her own credibility. Marion's testimony, taken on its face, did comment indirectly on Stephenie's credibility, and the jury was given no indication at the time of Marion's testimony that she was a fresh complaint witness. Marion's testimony, however, served to explain her actions and any reference to Stephenie's veracity was minimal. In addition, unlike the mother's testimony in *Lorette,* Marion was not the prosecution's key witness, as both daughters had testified in

detail about the abuse. In view of all of the evidence, and the judge's final instructions, any error was harmless. Nonetheless, at retrial, fresh complaint instructions should be given at the time of each fresh complaint witness to make clear to the jury that the testimony is merely corroborative. *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992) (judge should instruct jury on fresh complaint testimony when the evidence is admitted).

4. *Jury instructions on fresh complaint.* The defendant argues that the judge should have informed the jury that they "must" find that the complaint was fresh before they could consider it for its corroborative purpose. The judge, during the final charge, instructed the jury on the corroborative purpose of fresh complaint testimony. The judge then stated, "[Y]ou may reject the proffered evidence as being corroborative of the woman's testimony in this courtroom if you do not find that the complaints were made reasonably and promptly." At that time, the judge asked if the defendant had any objection to the instructions. Defense counsel responded that he did not. See *Commonwealth* v. *Vidito*, 21 Mass. App. Ct. 332, 335 (1985); *Commonwealth* v. *Colantonio*, 31 Mass. App. Ct. 299, 307 (1991).

If there was error, our review is limited to whether it rises to the level of a substantial risk of a miscarriage of justice. *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 223 (1992). While the jury instruction in the present case might have been more forceful, no error, much less any substantial risk of a miscarriage of justice, occurred. The instructions sufficiently apprised the jury of their duty to weigh the freshness of the complaints made by Stephenie and Jennifer. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 (1982) (no abuse of discretion when judge instructed the jury that they "could reject the proffered evidence as being corroborative of the victim's testimony if they did not find that the complaints were reasonably prompt"); *Commonwealth* v. *Densten*, 23 Mass. App. Ct. 981, 982 (1987) (no substantial risk of a miscarriage of justice found where the judge instructed the jury "that it was for them to decide whether 'to accept the

testimony as fresh complaint' . . . [and that] it is the province of the jury 'to say whether the evidence is to be accepted' "); *Commonwealth* v. *Titus, supra* at 223-224 (no substantial risk of a miscarriage of justice when judge told jury to "weigh" the absence of fresh complaint). On retrial, the instructions presumably will be clear and explicit as to the responsibility of the jury to determine the freshness of the complaint.

The judgments are reversed, and the verdicts are set aside.

*So ordered.*

APPENDIX.

A sample hypothetical question posed by the prosecution to Dr. Brant follows.

> *Q.:* "I would ask you to assume for purposes of this hypothetical, Doctor, that two sisters living with their mother and stepfather had sexual relations with the stepfather on a regular basis since the ages of twelve and nine. Further assume that neither sister disclosed those relations for six years while it was ongoing. I would ask you further to assume that at age fifteen the younger sister disclosed the sexual activity to her mother the following day on which the stepfather had intercourse with her in the afternoon and in the evening scolded her, yelled at her, and lectured her for failing to fold towels and finish dishes in the sink.

> "I would ask you to further assume that the morning after that incident, the fifteen-year-old girl became upset and told her mother the Defendant had been having sexual relations with her for years. Do you have an opinion, to a reasonable degree of medical certainty, as to whether or not those assumed facts are consistent with the girl who had been having

sexual relations with an adult since the age of approximately nine-and-a-half?"

*A.:* "I do."

*Q.:* "And what is that opinion?"

*A.:* "I think they are clinically consistent."

*Q.:* "And why is that?"

*A.:* "Well, I have described the circumstance in which the sexual relations can be maintained as a secret for a very long time. Then, comes the question about what the circumstances are under which a child who has had ongoing sexual relations will tell someone about it.

"Those circumstances can include, first of all, a child growing up and growing into adolescence and having a changed awareness of what their situation is, that more and more they might have wishes to have relationships outside the family. To the extent that they are limited in doing that and having sexual relationships within the family, that can become more and more bothersome to a child and create more conflict.

"It is often in the context of a family argument and anger that a child will, for the first time, tell someone about what has happened. Also, I think that what you described in terms of the child having sexual relationships at one point in time and then being reprimanded for not folding clothes in the proper sort of way, I think there can be a lot of strong feelings, a lot of conflict about, on the one hand being treated in a more adult fashion; on the other hand, being reprimanded as a child or a servant, that can give rise to anger. The anger in some way can counteract the fears that have led a child to keep the sexual relations secret.

"I think that by virtue of the argument, the anger, a child going into adolescence, that those are the kinds of circumstances in which it is very typical that a child might for the first time disclose a secret that they have been keeping for many years."