NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-812

COMMONWEALTH

vs.

LUIS ANGEL TORRES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Luis Angel Torres, was convicted of one count of indecent assault and battery on a child under fourteen years old, in violation of G. L. c. 265, § 13B. He was acquitted of one count of forcible rape of a child, in violation of G. L. c. 265, § 22A. On appeal, the defendant argues that one of the Commonwealth's expert witnesses improperly vouched for the credibility of the victim; the prosecutor's closing argument shifted the burden of proof to the defendant; and his trial counsel provided ineffective assistance by failing to object to evidence that the defendant (the victim's father) had a familial relationship with the victim's mother, and by failing to object

to argument and testimony that the defendant's sister did not want to leave the victim alone with the defendant. We affirm.

Background. We summarize the relevant facts as the jury could have found them, leaving some for further discussion. The victim, the defendant's daughter, was born in 2007. At the time of the incident, she lived with her mother and other relatives in Chicopee. There were no formal visitation arrangements between the victim's parents; when the defendant wanted to spend time with the victim, he would make arrangements with the mother and visit the victim at his sister's home in Springfield. In early 2015, when the victim was seven years old, the defendant visited her at the sister's home. After the sister left with her children in the morning, the defendant entered the victim's bedroom, closed the door, and told her to take off her clothes. When she refused, he grabbed her wrist and slammed her down to the floor onto her stomach. As the victim cried, the defendant pulled off her pants and underwear, and the victim felt his penis against her back. The defendant touched the victim's "butt" with his hands and put his penis inside it. The defendant then dressed and told the victim he would "do it again" if she did not stop crying.

After the victim's grandfather brought the victim home, her mother noticed that she appeared sad. The mother asked about

2

the visit, the victim told her what happened, and the mother called the police.

After the victim spoke with the police, she went to the hospital, where she was examined by Dr. Kimball Prentiss, a pediatric emergency medicine doctor. Dr. Prentiss administered a pediatric evidence collection kit, but did not make any findings after her examination of the victim. Two days later, the victim was examined by Dr. Steven Boos, a pediatrician with a subspeciality in child abuse pediatrics, and Dr. Boos's examination did not show any objective findings of abuse.

The trial took place almost seven years later. The victim, her mother, the defendant's sister, Dr. Prentiss, Dr. Boos, a forensic scientist, and two police officers testified for the Commonwealth. The defendant offered a redacted portion of the victim's forensic interview transcript into evidence, but did not call any witnesses. The jury returned a verdict of not guilty on the charge of forcible rape and a guilty verdict on the charge of indecent assault and battery.

The defendant filed a motion for a new trial raising a claim of ineffective assistance of trial counsel, which the trial judge denied without a hearing. The defendant now appeals from his conviction and the denial of his motion for a new trial.

Discussion.  1.  Vouching by the Commonwealth's expert witness.  The defendant argues that Dr. Boos improperly vouched for the victim's allegations.  Dr. Prentiss testified that Dr. Boos advised her to administer the pediatric evidence collection kit.  Dr. Boos testified that he had treated "several thousand" children presenting with concerns about suspected child abuse and that, in his opinion, it was "highly likely" that no injury would be found in a delayed physical examination following an alleged sexual assault.  When asked when pediatric evidence collection kits are performed, Dr. Boos testified:

> "There's two or three major criteria.  One is that there's enough suggestion that a -- an act has taken place.  The second is the amount of time that has passed since the act took place and then the third would be the consent and assent for the collection of the kit."

The defendant objected and moved to strike this testimony, and the judge overruled the objection.  Dr. Boos then testified that he examined the victim and found her to be "a normal prepubertal child" with no "objective findings to indicate abuse."

Because the defendant objected to this testimony, "we review to determine whether the error, if any, prejudiced the defendant[]."  Commonwealth v. DePina, 476 Mass. 614, 624 (2017).  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened

4

without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial." Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

An expert witness may not present testimony that "a reasonable jury would think . . . implicitly vouch[es] for the credibility of the complainant." Commonwealth v. Quinn, 469 Mass. 641, 647 (2014). The defendant argues that Dr. Boos engaged in vouching by asserting that pediatric evidence collection kits are performed only if there has been "enough suggestion" that "an act has taken place." We acknowledge that this testimony was potentially confusing to the jury. Before an evidence collection kit is administered, there will presumably be some suspicion or concern that "an act has taken place," yet presenting that concern as a criterion creates a risk that the jury will conflate the reason for the kit's administration with the forensic purpose it is intended to serve.

Nevertheless, we do not believe that the testimony amounted to prejudicial error. First, Dr. Boos's use of the term "suggestion" indicated, at most, an allegation of abuse, not a finding that Dr. Prentiss or he confirmed by administering the kit. Second, neither Dr. Prentiss nor Dr. Boos offered an opinion as to whether the victim was abused. Third, the judge instructed the jury that they alone would determine the

5

credibility of the witnesses, including the credibility of expert witnesses, and that it was "entirely within [their] role as a jury to decide who and what to believe and how much [they] believe it and what weight to give it."  Fourth, the fact that the jury acquitted the defendant of forcible rape of a child indicates that they parsed the evidence carefully and that this testimony "did not have a prejudicial effect on the jury." Commonwealth v. Hampton, 91 Mass. App. Ct. 852, 855 (2017). Accordingly, even if we were to assume error, we are confident that the testimony "did not influence the jury or had but very slight effect."  Flebotte, 417 Mass. at 353.[1]

_____

[1] As the Supreme Judicial Court has recognized, "[A] medical expert may be able to assist the jury by informing them that the absence of evidence of physical injury 'does not necessarily lead to the medical conclusion that the child was not abused,'" Commonwealth v. Alvarez, 480 Mass. 299, 314 (2018), quoting Commonwealth v. Federico, 425 Mass. 844, 851 (1997), "because '[t]he jury may be under the mistaken understanding that certain types of sexual abuse always or nearly always causes physical injury or scarring in the victim.'"  Alvarez, supra, quoting Federico, supra at 851 n.13.  Such testimony does not amount to vouching for the victim, Commonwealth v. Quincy Q., 434 Mass. 859, 872 (2001), and where such testimony is offered "to negate the inaccurate inference that a child who was sexually abused would have sustained some genital injury," the Commonwealth is not required "to call a nontreating physician expert to offer such an opinion."  Alvarez, supra.  Nevertheless, the potential for confusion that arose from Dr. Boos's testimony in this case shows why we have "long and frequently . . . cautioned" against percipient witnesses also testifying as expert witnesses, particularly in sexual assault cases.  Commonwealth v. Velazquez, 78 Mass. App. Ct. 660, 667 (2011).  Prosecutors can minimize the risk of error by utilizing "sexual abuse experts who have no connection with and make no references to the child

6

2. The prosecutor's closing argument. The defendant argues that the Commonwealth committed prejudicial error by improperly shifting the burden of proof to him during closing argument. After defense counsel challenged the credibility of the victim's testimony and the consistency of the prosecution's witnesses' testimony, the prosecutor responded by asking a series of questions that cast doubt on the defendant's argument, eventually asking, "What is their theory of why and who made it up?" The defendant objected to this statement and requested a curative instruction that the defendant did not have the burden to prove anything. The judge denied the defendant's request, stating that the defendant "opened the door to it" and that the prosecutor's statement did not "create any burden shifting." Because the defendant objected to the prosecutor's statement, we review for prejudicial error. See Commonwealth v. Alvarez, 480 Mass. 299, 305 (2018).

"We consider remarks made during closing 'in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury.'" Commonwealth v. Andre, 484 Mass. 403, 417-418 (2020), quoting Commonwealth v. Felder, 455 Mass. 359, 368 (2009). At closing, a prosecutor is "entitled to point out the weaknesses of the defendant's case and 'make a

victim." Commonwealth v. McCaffrey, 36 Mass. App. Ct. 583, 593-594 (1994).

7

fair reply to the defendant's closing argument.'" Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018), quoting Commonwealth v. Smith, 404 Mass. 1, 7 (1989). In so doing, however, the prosecutor "may not shift the burden of proof or argue that the defendant has any affirmative duty to prove his innocence." Fernandes, supra, citing Commonwealth v. Johnson, 463 Mass. 95, 112 (2012). For this reason, as a general rule, "rhetorical questions should not be used in closing argument where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant." Commonwealth v. Habarek, 402 Mass. 105, 111 (1988).

Although we believe that the prosecutor's rhetorical question, "What is their theory of why and who made it up?" was better left unsaid, this statement did not amount to prejudicial error in the context in which it was made. Most of the prosecutor's statements in this part of the argument were unobjectionable responses to the defense's theory that the victim's accusation was "made up" and that her and her mother's testimony was not consistent or credible. See Commonwealth v. Rakes, 478 Mass. 22, 45 (2017); Commonwealth v. Rogers, 43 Mass. App. Ct. 782, 785-786 (1997). Further, although the judge denied the defendant's request for a curative instruction, he instructed the jury in his final charge that the defendant "did not have to explain anything," that "[t]he burden of proof rests

entirely on the Commonwealth[,] and that burden never shifts." See Johnson, 463 Mass. at 114; Commonwealth v. Bregoli, 431 Mass. 265, 279 (2000).  We presume that jurors follow a judge's clear instructions.  Commonwealth v. Helfant, 398 Mass. 214, 228 (1986).

3.  Ineffective assistance of trial counsel.  The defendant argues that the judge abused his discretion in denying his motion for a new trial based on ineffective assistance of counsel.  We review the denial of a motion for a new trial "to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  "A defendant has a heavy burden to establish ineffective assistance of counsel sufficient to warrant a new trial."  Commonwealth v. Lao, 450 Mass. 215, 221 (2007).  The defendant must establish that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

a.  Evidence of the familial relationship between the defendant and the victim's mother.  The defendant argues that trial counsel was ineffective in failing to object to evidence that the defendant engaged in a sexual relationship with his half-sister, the victim's mother, when she was sixteen years

9

old, and in failing to request a specific limiting instruction when this evidence was introduced. The Commonwealth introduced this fact during its opening statement, telling the jury that "it's important for you to know that [the victim's mother] and the defendant are half siblings," the victim was born when the mother "was just [sixteen] years old [and the] defendant was [twenty] years old, and they have the same father." The Commonwealth elicited testimony about the relationship from both the victim's mother and the defendant's sister. The defendant argues that this evidence was unfairly prejudicial because it suggested that he was inclined toward incestuous relationships with young women. In an affidavit, trial counsel stated that he considered filing a motion in limine to preclude this evidence but decided not to "because [he] thought that this relationship was background information that would be admitted whether or not [he] objected." In denying the motion for a new trial, the judge stated that "the challenged evidence was probative" and "relevant background evidence," and "[t]o suggest that the jury was inflamed or was subjected to unduly prejudicial evidence and acted accordingly is absurd."

Because the judge who denied the motion for a new trial also presided at trial, we defer to his view that trial counsel's "overall strategy and effectiveness [was] sound." See Commonwealth v. Barnett, 482 Mass. 632, 638 (2019), citing

10

Grace, 397 Mass. at 307. We do not agree, however, with the judge's conclusion that the evidence at issue was probative or necessary to explain the "complicated" family dynamic. Rather, it would have been appropriate for defense counsel to object to the admission of this evidence and seek to resolve any confusion about the family members' shared surname and living arrangements through either a narrow stipulation of facts or a limiting instruction.

Assuming without deciding that defense counsel was deficient in failing to object to this evidence or request a limiting instruction when it was introduced, we conclude that the defendant cannot satisfy the second prong of Saferian, i.e., that he was deprived of a substantial ground of defense. As the judge found, "[T]he evidence was not emphasized." The prosecutor did not argue that the defendant had a propensity to engage in incestuous relationships; the term "incest" was never spoken at trial. During the charge conference, defense counsel acknowledged that, while the evidence of the familial relationship could have "a very kind of unique prejudicial effect," the Commonwealth had not "focused on it" during its case. Finally, the fact that the jury acquitted the defendant of forcible rape shows that they were not swept away by the prejudicial impact of this evidence.

11

b.  <u>Evidence that the defendant's sister did not want to leave the victim alone with the defendant</u>.  The defendant also argues that trial counsel was ineffective in failing to object to testimony and argument that the defendant's sister would not let the victim be alone around "her own father."  The sister testified that when the victim visited the defendant at her house, she was certain that she never left the two of them alone.  Apparently skeptical of the sister's testimony, the prosecutor asked the sister repeatedly to affirm that, when the victim was under her care, she never left "her alone with anybody including her own father."  Trial counsel did not object to the substance of these questions.  Later, during closing argument, the prosecutor argued, without objection by defense counsel, that the sister, "who loved [the victim] so much[,] . . . testified to you she didn't want to leave her alone ever. [The sister] testified that she didn't want to leave [the victim] alone with her own father.  Think about that.  But she did leave her alone.  She did."

The defendant contends that the prosecutor's line of questions elicited improper character evidence because it "communicated to the jury that [the sister] did not trust that [the victim] would be safe in [the defendant's] care," and that trial counsel's failure to object to the testimony and argument prejudiced the defendant by providing corroboration of the

12

victim's allegations.  We disagree.  Although "[e]vidence of a person's bad character is generally not admissible for the purpose of proving that he acted in conformity with it," Commonwealth v. Daley, 439 Mass. 558, 562 (2003), the sister did not testify about the defendant's bad character but rather her general practice of not leaving the victim alone with anyone, including the defendant.  See Mass. G. Evid. § 404 (a) (1) (2021).  Furthermore, the testimony was relevant to whether the defendant had an opportunity to commit the alleged crimes.  See Commonwealth v. West, 487 Mass. 794, 805 (2021).  In fact, the sister's testimony arguably supported the defendant's position, and at closing argument the prosecutor sought to undermine her testimony by arguing that the sister did in fact leave the victim alone with the defendant.  Accordingly, trial counsel was not ineffective in failing to object to this testimony and argument, and the judge did not err or abuse his discretion by

denying the defendant's motion for a new trial without an evidentiary hearing.

Judgment affirmed.

Order denying motion for new trial affirmed.

By the Court (Vuono, Shin & Toone, JJ.[2]),

*Paul Little*

Clerk

Entered:  August 2, 2024.

---

[2] The panelists are listed in order of seniority.