COMMONWEALTH *vs.* JAMES ROGERS.

No. 95-P-415.

Worcester. May 14, 1997. - November 13, 1997.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Practice, Criminal,* Argument by prosecutor. *Witness,* Credibility.

At the trial of an indictment, the prosecutor's rhetoric in closing argument did not constitute improper comment on defense counsel's integrity and trial conduct, viewed in the context of the prosector's entire argument and in the context in which the prosecutor's remarks were made. [785-786]

At the trial of an indictment, the prosecutor's improper reference in closing argument to evidence excluded on the defendant's objection was harmless error, where the evidence had later been properly admitted through the testimony of another witness. [786-787]

At a criminal trial, the prosecutor properly referred in closing argument to the size of the defendant in relation to his wife, who was ·a Commonwealth witness, in order to argue her state of mind. [787]

Any error in a prosecutor's closing argument at a criminal trial was cured by the judge's particularly strong, forceful and specific instructions to the jury regarding the role of counsel and the function of closing arguments. [787]

INDICTMENT found and returned in the Superior Court Department on June 15, 1993.

The case was tried before *Mary-Lou Rup*, J.

*Jonathan S. Sales* (*Joseph J. Mazza* with him) for the defendant.

*Brian J. Cann* (*Joseph J. Reilly, III*, with him) for the Commonwealth.

SMITH, J. The defendant was charged in an indictment with (1) six counts of unnatural sexual intercourse with a child under the age of sixteen; (2) six counts of indecent assault and battery on a child under the age of fourteen; and (3) eight counts of soliciting a child to pose in a state of nudity.

During the jury trial, the judge allowed the defendant's motion for a required finding of not guilty on the six counts alleg-

ing unnatural sexual intercourse with a child under the age of sixteen and on one of the counts alleging indecent assault on a child under the age of fourteen. The jury returned not guilty verdicts on three counts alleging indecent assault and battery on a child under the age of fourteen and not guilty on four counts alleging soliciting a child to pose in a state of nudity. The defendant was found guilty of two counts of indecent assault and battery on a child under the age of fourteen and four counts of soliciting a child to pose in a state of nudity.

On appeal, the defendant raises one issue — that the prosecutor's comments in his closing argument, some of which were subject to an objection, constituted reversible error. "In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in the light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984), quoting from *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 885 (1984).

The Commonwealth presented the following evidence at the trial. The defendant and his wife, Lisa, lived next door to the Jones[1] family. It was the Commonwealth's theory at trial that the defendant and his wife engaged in sexual conduct with two of the Joneses' daughters, Ruth, who was just under two years old, and Mary, who was about two years and seven months old at the time the first alleged sexual conduct took place.[2]

Lisa testified as a witness for the Commonwealth that she first baby-sat for the Jones children three times in one week in September, 1992, and again in December, 1992. In January, 1993, Lisa agreed to baby-sit for Ruth and Mary in the Joneses' apartment two or three times per week. The incidents that formed the basis of the various counts occurred on one occasion in January, 1993, and one occasion in February, 1993.

According to Lisa, while she was baby-sitting the two girls in January, 1993, the defendant came to the Joneses' apartment with a Polaroid instant camera. Lisa testified that, under duress from the defendant, she photographed him performing various sexual acts on the two young girls; the defendant photographed Lisa engaging in sexual acts with two-year-old Ruth; and the defendant took a photograph of Mary posed in a state of nudity.

---

[1] The names of the family and the two victims are pseudonyms.

[2] The defendant's wife pleaded guilty to several counts alleging sexual misconduct in connection with the incidents.

Similar incidents occurred on one occasion in February, 1993. After each incident, the defendant put the Polaroid pictures in an envelope and placed the envelope underneath some books inside a cabinet in their home.

Sometime during the second week in April, the defendant and Lisa had an argument after Lisa told him that she wanted a divorce. Because she was afraid that the defendant would bring the incriminating photograph of her performing a sexual act on Ruth to the police, Lisa took the photographs, called her next door neighbor, one Laurie Seymour, and asked her to hide the pictures. Lisa instructed Seymour not to look at the photographs or show them to anyone.

Seymour testified as a witness for the Commonwealth. She testified that about three days after she hid the envelope containing the pictures, she looked at them out of curiosity. Two of the pictures depicted the defendant engaged in a sexual act with a small child; the third photograph showed Lisa engaged in a sexual act with the same child. Seymour put the pictures back in the envelope and returned the envelope to the hiding place. About April 23, 1993, Lisa telephoned Seymour and requested that Seymour return the envelope with the photographs. Seymour did so and she and Lisa burned the photographs. Sometime in May, Seymour called "the authorities" regarding the photographs.

On May 4, 1993, Lisa also spoke with someone at the Department of Social Services (DSS) regarding the pictures. Lisa also told the defendant that she had notified DSS.

On May 6, 1993, the defendant, who was a taxicab driver, picked up Lisa and one Mandy Leo in his cab. Mandy was a friend of both Lisa and the defendant. After driving around for a while, the defendant stopped at a park in Worcester. The defendant asked Mandy to stay in the cab so that he and Lisa could talk privately. Once out of the cab and walking in the park, the defendant asked Lisa why she had gone to DSS. He also told her that when they went to Juvenile Court (apparently DSS had filed a care and protection petition) she should tell the court that she had lied about the pictures. Lisa responded that she could not because DSS "knew the whole truth."

Mandy testified that she overheard the defendant urge Lisa "to lie, . . . to tell [DSS] that she [had] lied and made the whole thing up." Mandy also testified that she heard Lisa tell the defendant, "I can't, Jim, too many people know the truth."

The police executed a search of the defendant's apartment and seized an instant Polaroid camera, which Lisa identified as the one used to take the pictures of the children. After the Commonwealth rested, the defendant also rested without putting on any evidence.

On appeal, the defendant argues that his convictions must be reversed because the prosecutor, in his closing argument, (1) "engaged in an attack upon defense counsel's integrity and trial conduct so sustained, pervasive and flagrant that it constituted a total deprivation of the defendant's right to counsel, interfered with the defendant's right to a fair trial by an unbiased jury, and deprived the defendant of the right to be presumed innocent," (2) made improper comments on the defendant's exercise of his right not to testify, (3) made improper comments on matters not in evidence, (4) made wrongful references to matters excluded from evidence, and (5) made improper attacks upon the defendant's character and appearance before the jury.

1. *Prosecutor's alleged attacks on defense counsel's integrity and trial conduct.* In his closing argument, defense counsel attacked the credibility of each of the Commonwealth's witnesses by summarizing their testimony and then pointing out repeatedly what he perceived as discrepancies and contradictions in their testimony. That tactic is proper. *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994) ("The credibility of witnesses is obviously a proper subject of comment").

A prosecutor may properly respond to defense counsel's closing argument to the extent necessary to correct an erroneous impression created by defense counsel. *Commonwealth* v. *Kozec*, 399 Mass. 514, 519 n.9 (1987). *Commonwealth* v. *Mello*, 420 Mass. 375, 380-381 (1995). Further, a prosecutor "may make a fair response to an attack on the credibility of a government witness." *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993).

Here, the prosecutor told the jury that defense counsel in summarizing the testimony of each of the Commonwealth's witnesses had "misconstrued the evidence" and, while the prosecutor did not think that this was "purposefully done, . . . it was [nevertheless] improper . . . ." The prosecutor then proceeded to summarize the testimony of each of the Commonwealth's witnesses as he saw it and suggested to the jury that, contrary to defense counsel's argument, there were no discrepancies or contradictions in the testimony of the witnesses. At least twice after summarizing the evidence of the

witnesses, the prosecutor resorted to the use of rhetorical questions ("[Defense counsel], where is the discrepancy?"). Defense counsel objected, and the judge sustained the objection. "As a general rule, . . . rhetorical questions should not be used in closing argument where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant." *Commonwealth* v. *Habarek*, 402 Mass. 105, 111 (1988). We have reviewed both objections that were sustained and hold that, in light of the defendant's closing argument and in the context in which the questions were asked, the prosecutor's rhetorical questions could not have been perceived by the jury as shifting the Commonwealth's burden of proof to the defendant.[3] *Commonwealth* v. *Valentin*, 420 Mass. 263, 274 (1995) ("[T]he thrust of the [prosecutor's] argument was plainly apparent, and the jury could not have understood it for anything more than a rhetorical effort on the part of the prosecutor to explain" why the testimony of the Commonwealth's witnesses was indeed credible).

"Although the prosecutor's remarks were 'enthusiastic rhetoric, strong advocacy, and excusable hyperbole,' they did not cross the line between fair and improper argument." *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997), quoting from *Commonwealth* v. *Costa*, 414 Mass. 618, 628 (1993). Therefore, in view of the prosecutor's entire argument and the context in which the challenged comments were made, we reject the defendant's claim that the prosecutor made improper comments on defense counsel's integrity and trial conduct.

2. *Other claimed errors.* The defendant claims that at one point in his closing argument the prosecutor referred to a matter that had been excluded from evidence as a result of an objection by defense counsel that was sustained by the judge. The prosecutor stated that defense counsel had told the jury that Lisa had "never told anybody . . . details about being sexually abused during the marriage." The prosecutor then noted that defense counsel had objected to the admission of the evidence

---

[3]The defendant argues that the prosecutor's use of rhetorical questions interfered with the defendant's exercise of his privilege not to testify. Because of the context in which the rhetorical questions were asked, the argument is without merit. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 892 (1980), quoting from *United States* v. *Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), cert. denied, 430 U.S. 917 (1977) (the questions were not "of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify").

so "[h]ow can he get up after having made the objection and say to you there is no evidence of that?"

·"No attorney shall refer in closing argument to evidence which has been excluded, nor may he or she invite an inference from the exercise of a party's right to have evidence excluded." *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977). The prosecutor should not have mentioned that defense counsel had objected to the prosecutor's question, an objection that had been sustained; the error, however, was harmless because the excluded evidence had come in later when Lisa testified that she had told her parents and the police that she had been sexually abused.

The defendant argues that in closing argument the prosecutor improperly asked why defense counsel had not asked Lisa how "she came up with the dates as to when [the incidents occurred]." The prosecutor's argument was in response to defense counsel's argument that Lisa "never explained to you how she came up with the dates of mid January and mid February. She never gave you an answer." However, defense counsel had asked the question, which Lisa had answered. Apparently, the prosecutor had forgotten that defense counsel had asked the question and defense counsel also forgot in his closing argument that she had indeed given an answer to the question. Any error was harmless.

The defendant claims that the prosecutor improperly referred to the defendant's "demeanor" in his closing argument when the prosecutor stated that "Lisa was afraid of this man. Look at him." The prosecutor could properly refer to the defendant's size in comparison to Lisa's. See *Commonwealth* v. *Young*, 399 Mass. 527, 530 (1987).

3. *Judge's focused curative instruction.* Any error in the prosecutor's closing argument was cured by the judge's particularly strong, forceful, specific instructions to the jury. She repeatedly told the jury about the role of counsel and the function of closing arguments. The judge also warned the jury to "disregard any opinions that counsel may have expressed about the positions of other counsel or the position that either counsel may have taken during the course of this trial about the way in which other counsel presented or viewed the case . . . ."

4. *Conclusion.* "We have said that, '[a] certain measure of jury sophistication in sorting out excessive claims on both sides

may fairly be assumed.' " *Commonwealth* v. *Sanna*, 424 Mass. at 107, quoting from *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and *Commonwealth* v. *Kozec*, 399 Mass. at 517. We note that the jury returned not guilty verdicts on seven counts. Accordingly, we conclude that, although the prosecutor "sailed close to the wind," the remarks did not prejudicially affect the jury's deliberations.

*Judgments affirmed.*