Brassard, Raymond J., J.
On June 15, 2009, a jury found the defendant Michael Collins (“Collins”) guilty of second degree murder in violation of G.L.c. 265, §2, armed assault with intent to murder in violation of G.L.c. 265, §18(b), and possession of a firearm without a license in violation of G.L.c. 269, §10(h). The matter is currently before the court on Collins’s motion for a new trial pursuant to Mass.R.Crim.P. 30(b). Collins’s motion raised a number of issues, and the court concluded that the majority of those issues could be decided on the papers. As such, this court issued a decision dated October 8, 2013, denying Collins’s motion in part [31 Mass. L. Rptr. 437). The court *571 determined, however, that Collins’s claim that the Commonwealth failed to disclose a deal with Pierre LaGuerre (“LaGuerre”) in exchange for his testimony at Collins’s trial raised a substantial issue, and ordered an evidentiary hearing for November 4, 2013. After hearing, and for the reasons stated below, Collins’s motion for a new trial is DENIED.
FINDINGS OF FACT
On the basis of the credible evidence, and inferences reasonably drawn therefrom, the court finds as follows.
On December 5, 2006, Myles Lawton was shot and killed at 91 Florida Street in Dorchester. LaGuerre was also shot. On the night of the shooting, LaGuerre told the police that “Goodie” or “Goldie” shot him. Goodie is Collins’s nickname, and LaGuerre knew Collins as Goodie at the time of the incident. On December 16, 2006, while still in the hospital, LaGuerre identified Collins from a photo array as the person who shot him. Further, on February 2, 2007, LaGuerre testified before the grand jury, and again identified Collins as the shooter.
On July 7, 2007, LaGuerre was arrested in South Boston for distributing cocaine in a school zone. A police officer observed LaGuerre sitting in a vehicle. The officer had arrested LaGuerre in the past, and three confidential informants had told the officer that LaGuerre was selling drugs. The officer saw a woman approach LaGuerre’s vehicle, and thought that he saw a drug transaction take place. The officer did not witness any drugs, money, or other items pass between LaGuerre and the woman. When officers stopped the woman, she had a bag of crack cocaine in her possession, and said that she had gotten the drugs from LaGuerre. Further, when officers stopped LaGuerre, he had fifty dollars on him, however, the police found no drugs in his possession. LaGuerre told police that he had lent the woman money in the past, and that she had just paid him back.
A criminal complaint issued from the South Boston Division of the Boston Municipal Court (“BMC”) two days later on July 9, 2007, charging LaGuerre with distribution of cocaine in violation of G.L.c. 94C, §32A, and distribution of cocaine in a school zone in violation of G.L.c. 94C, §32J. In December 2008, the case was transferred to the Central Division of the BMC.
On April 28, 2009, LaGuerre’s drug case was called in the BMC. Assistant District Attorney David Fredette (“ADA Fredette”) answered on the case for the Commonwealth. ADA Fredette was the trial prosecutor for Collins’s case in the Superior Court. It was ADA Fredette’s practice to answer on cases that involved important witnesses from his pending cases in the Superior Court, particularly if the witness was a defendant in a criminal matter. Attorney Scott Curtis (“Attorney Curtis”) represented LaGuerre. LaGuerre was late for the hearing, and received a preliminary default. The transcript of the hearing indicates that LaGuerre was absent for the entirety of the hearing.
The purpose of the April 2009 hearing was to select a trial date. ADA Fredette represented to the court that, “Mr. [LaGuerre] is a witness on a murder case of mine that’s about to start in a few weeks. I, my anticipation is that this case is going to get resolved probably by a nol prosse. We’re looking for that. I’m just waiting to get approval of that from the higher ups.” R.A.[1] 179. He fhrther stated, “(a]nd whatever is done is going to be done via a cooperation agreement on paper. You know, the defense attorney is going to know about it.” Id. at 180. ADA Fredette indicated that he wanted LaGuerre’s trial to be scheduled after the conclusion of Collins’s trial. ADA Fredette and Attorney Curtis agreed on a trial date of June 8, 2009.
Collins’s trial began on May 18, 2009 in the Suffolk Superior Court before this judge. Before jury empanelment began, ADA Fredette told the court, and defense counsel, about LaGuerre’s pending drug case in the BMC. He stated that Attorney Curtis had been in contact with him, and was seeking to arrange a deal in exchange for LaGuerre’s testimony in Collins’s case. ADA Fredette indicated that Attorney Curtis was “asking for a dismissal because Mr. [LaGuerre] is a key witness on [Collins’s] murder case.” Tr. 1:16.
ADA Fredette then stated, “as of today, there are no promises, rewards or inducements to Mr. [LaGuerre] from Mr. Curtis. My position is regardless of what’s done on Mr. [LaGuenre’s] case, he’s going to get cross-examined on it.” Id. ADA Fredette stated, “My position is I would like—I’m asking my office to nol pros the case against Mr. [LaGuerre]. That’s my position. I don’t make that decision. The Chief of my unit is making that decision.” Id. at 17. The court asked ADA Fredette when a decision would be made, and Attorney Fredette responded, “I’m hoping it’s made today.” Id. ADA Fredette disclosed that LaGuerre’s trial was scheduled for the middle of June, which would be after LaGuerre was scheduled to testify.
ADA Fredette spoke with his supervisors concerning a deal for LaGuerre on his drug case in exchange for his testimony at Collins’s trial. Together with his supervisors, ADA Fredette decided not to offer LaG-uerre any consideration in exchange for his testimony. ADA Fredette could not recall exactly when the decision was reached.
ADA Fredette and his supervisors based their decision on the fact that Attorney Curtis had indicated that LaGuerre intended to testify against Collins regardless of whether he received consideration in the drug case. Attorney Curtis told ADA Fredette that LaGuerre wanted to testify against Collins because Collins had shot him, and because Collins had killed his friend. ADA Fredette took into consideration the fact that LaGuerre had been cooperating with police since the night of the crime, and had testified in front of the grand jury before the drug arrest. Further, ADA Fred-ette thought that LaGuerre had credibility issues, and did not want to give defense counsel another ground on which to impeach LaGuerre’s testimony.
*572 Assistant District Attorney Laura Montgomery (“ADA Montgomery”) was assigned to LaGuerre’s drug case sometime around April of2009. OnMay20,2009, ADA Montgomery received a note indicating that she had missed a phone call from ADA Fredette. While ADA Montgomery did not have an independent memory of when she returned ADA Fredette’s phone call, she estimates that she likely returned the call either that day or soon thereafter. ADA Montgomery recalled having a phone conversation with ADA Fredette regarding LaGuerre’s drug case. She remembered that ADA Fredette told her to handle LaGuerre’s case in the normal course, and told her not to consider the fact that LaGuerre was a witness in another case. ADA Fredette did not tell her to “nol pros” or dismiss LaGuerre’s case. Further, ADA Fredette did not tell her to give any consideration to LaGuerre in exchange for his testimony in Collins’s case. She also recalled that ADA Fredette told her to document the reasons why she agreed to any disposition in LaGuerre’s case.
On May 29, 2009, LaGuerre was called as a witness in Collins’s trial. On direct examination, ADA Fredette asked LaGuerre about the drug case against him in the BMC. LaGuerre testified that the case was currently pending, and that the Commonwealth had not promised him anything in exchange for his testimony.
On cross examination, LaGuerre again stated that he did not expect to receive any consideration for his testimony. Defense counsel specifically asked LaG-uerre about ADA Fredette’s appearance for the Commonwealth at the April 2009 hearing in the BMC.[2] Defense counsel produced the docket sheet for LaGuerre’s drug case, which showed that ADA Fred-ette appeared at the April hearing.[3] Defense counsel asked LaGuerre why he was not seeking consideration for his testimony, and LaGuerre stated, “that’s a petty case.” Tr. 7:253. Defense counsel pointed out that LaGuerre faced a distribution in a school zone charge, which was a serious offense with a mandatory minimum sentence. Again, LaGuerre indicated that Commonwealth did not have a strong case against him. He stated “they didn’t catch me with nothing on me,” in reference to the fact that he did not have drugs on him at the time of his arrest. Id.
In response to defense counsel’s cross examination of LaGuerre, on May 30, 2009, the Commonwealth called Attorney Curtis as a witness. Attorney Curtis testified that he had attempted to get a deal for LaG-uerre in exchange for his testimony, however, there was currently no deal. ADA Fredette questioned Attorney Curtis about the status of LaGuerre’s drug case.
Q. “And is that case [LaGuerre’s drug case] currently scheduled to go to trial at some point, sir?”
A. “This coming Monday.”
Q. “Are you still going to try to resolve that with the person who is handling the case in the District Court?”
A. “I don’t know which DA, but certainly I would give it a try, yes.”
Tr. 8:8. Attorney Curtis explained that in his experience, cases like LaGuerre’s are typically resolved short of trial with either probation or a continuance without a finding.
On cross examination, Attorney Curtis testified that LaGuerre’s drug case was taking longer than usual to be resolved, and admitted that he was seeking continuances in the hope that he could arrange a deal for his client. Attorney Curtis reiterated that it was possible that LaGuerre could still receive a favorable disposition of his drug case. Defense counsel asked, “You’re going to ask for some consideration for Mr. [LaGuerre’s] testimony?” Id. at 21. Attorney Curtis again responded that he would continue to seek consideration for LaGuerre’s testimony.
Closing arguments in Collins’s trial took place on June 8, 2009, the same day that LaGuerre’s trial was expected to begin in the BMC. Both defense counsel and ADA Fredette addressed the possibility of LaGuerre receiving a favorable deal from the Commonwealth in exchange for his testimony against Collins.[4] Defense counsel argued:
And Mr. [LaGuerre] came in here and said why I’m cooperating, why are they helping me. I pick up another drug case, and my drug case takes two years to get through the system, two years. That was the average time, but the Commonwealth wants you to believe we didn’t promise him anything. We didn’t. Well, ladies and gentlemen, [if] they didn’t promise him anything, what’s Mr. Fredette’s name doing on the docket sheet? Why is Mr. Fredette down in district court for Pierre [LaGuerre’s] case if they’re not promising him anything in exchange for his testimony? You heard Scott Curtis a lawyer say, never heard of that before, a homicide DA down in district court on a routine drug case. What’s he hiding? What’s he hiding ladies and gentlemen?
Tr. 12:99-100. In response to defense counsel’s argument, ADA Fredette argued:
And that’s the motive of this entire case, is [sic] greed. Pierre [LaGuerre’s] greed and Michael Collins’s greed. And somehow the defendant still wants you to believe that Pierre [LaGuerre] is getting some sort of a deal on his open case, that she waved the docket sheet around in front of you with my name on it and somehow that means Pierre [LaG-uerre] shouldn’t be believed, to the point that we had to bring in his attorney, Scott Curtis. And what did Mr. Curtis say to you? There is no deal. I’ve been asking for a deal. I asked Mr. Fredette to come down to the [BMC]. I wanted a deal on the case, and I wanted to resolve the case. And what was the result? No deal. Mr. [LaGuerre] needs to be held responsible for his actions. You don’t get a free pass just because you happen to be shot. He’s got to be held responsible for his actions, just like Mr. Collins needs to be held responsible for his actions.
Id. at 160-61.
*573 Meanwhile, with respect to LaGuerre’s BMC drug case, ADA Montgomery issued summonses to various witnesses in anticipation of trial. However, on June 8, 2013, ADA Montgomery reached an agreement with LaGuerre whereby LaGuerre would plead guilty. The parties agreed that LaGuerre would plead guilty to possession of cocaine, and was sentenced to a continuance without a finding for nine months. The school zone charged was dismissed.
Also, on June 8th, ADA Montgomery wrote a memorandum to the file explaining the reasons why she agreed to the plea with LaGuerre. ADA Montgomery’s plea with LaGuerre was not in exchange for his testimony in Collins’s case. ADA Montgomery took into consideration that LaGuerre had only one prior drug-related arrest, which resulted in a jury verdict of not guilty. Further, the police officers necessary for trial were late arriving to the courthouse. ADA Montgomery also considered the fact that the case against LaG-uerre was old, and not strong.
DISCUSSION
A court may grant a motion for a new trial when “it appears that justice may not have been done.” Mass.RCrim.P. 30(b). The decision of whether to grant the motion is left to the sound discretion of the court. See Commonwealth v. Marrero, 459 Mass. 235, 240 (2011). The court should grant the motion, however, if the “trial was infected with prejudicial constitutional error.” See id. (internal quotations omitted).
The failure of the Commonwealth to disclose evidence that is favorable to a criminal defendant upon request violates due process when the evidence is material to the defendant’s guilt. See Commonwealth v. Hill 432 Mass. 704, 715 (2000), citing Brady v. Maryland, 373 U.S. 83, 87 (1963). “Understandings, agreements, promises, or any similar arrangements between the government and a significant government witness is exculpatory evidence that must be disclosed.” Id. at 715-16. The Supreme Judicial Court has stated that the exact terms of an agreement do not need to be “clearly delineated,” but that “any communication that suggests preferential treatment to a key government witness in return for that witness’s testimony is a matter that must be disclosed by the Commonwealth.” Id. at 716. The failure to disclose such evidence following a “specific and relevant request for exculpatory evidence . . . [is] excused only if the error did not influence the jury, or had but very slight effect.” Id. (internal quotations omitted).
Collins argues that the Commonwealth was required to disclose that ADA Fredette was attempting to secure a favorable deal for LaGuerre in exchange for his testimony, and continued LaGuerre’s BMC case until after LaGuerre was scheduled to testify. Collins asserts that ADA Fredette’s representations that he would secure a deal for LaGuerre constituted a promise, reward, or inducement. As such, Collins maintains that the Commonwealth should have provided the defense with a transcript of the April 2009 BMC hearing, which is evidence of ADA Fredette’s promise to LaGuerre.
The court fully credits ADA Fredette and ADA Montgomery’s testimony that LaGuerre was not given a deal on his BMC drug case in exchange for his testimony at Collins’s trial. The court finds both ADA Fredette and ADA Montgomery to be credible witnesses. Further, the timeline of events is consistent with ADA Fredette and ADA Montgomery’s representations. In April 2009, ADA Fredette stated in front of the BMC judge that he was seeking to “nol pros” LaGuerre’s case, but that he lacked the authority to do so. On May 18, 2009, ADA Fredette represented to this court that he was still seeking to “nol pros” LaGuerre’s case, and was awaiting a decision from his supervisors. He told that court that he hoped a decision would be reached that day. On May 20, 2009, ADA Montgomery received a phone call from ADA Fred-ette, instructing her to dispose of LaGuerre’s case in the normal course, and not take into consideration LaGuerre’s testimony in Collins’s case. LaGuerre testified on May 29, 2009, and ADA Montgomery was ready to proceed to trial on June 8, 2009.
In addition, the court finds that ADA Fredette’s proffered reasons for ultimately deciding not to offer LaG-uerre a deal in exchange for his testimony are credible, and are consistent with the trial transcripts and evidence in this case. LaGuerre had cooperated with police, and testified in front of the grand jury before his South Boston drug arrest. Further, Collins shot LaGuerre, and murdered LaGuerre’s friend, thus giving LaGuerre motive to testify against Collins. The court fully credits ADA Fredette’s testimony that Attorney Curtis represented to him that LaGuerre intended to testify regardless of whether he received a favorable deal.[5] The court also notes ADA Fredette’s candid, and credible, testimony that he did not want to give LaGuerre a deal because he did not want to give Collins another ground on which to impeach LaGuerre’s testimony.
Further, the Commonwealth disclosed all exculpatory evidence concerning any understandings, promises, rewards, or inducements that it had with LaGuerre. ADA Fredette properly disclosed to the court, defense counsel, and Collins that he wanted to “nol pros” LaGuerre’s case, but was waiting on approval from his superiors. He further disclosed that LaGuerre’s trial was scheduled for mid-June, after LaGuerre would likely testify at Collins’s trial. Thus, defense counsel was aware that ADAFredette wanted to give LaGuerre a deal in exchange for his testimony, and that it was possible for such a deal to be consummated before LaGuerre’s trial. Contrast Commonwealth v. Burgos, 462 Mass. 53, 62 (2012) (finding no constitutional error where Commonwealth disclosed cooperation agreements), with Hill 432 Mass, at 711 (upholding motion judge’s determination that the Commonwealth failed to disclose representations “that reasonably could be interpreted either as a promise to dismiss or to file a nolle prosequi of the trafficking charge, *574 or at least, to reduce the charge to a lesser offense in return for [the witness’s] continued cooperation”).
Assuming arguendo that the Commonwealth should have provided the defense with a transcript of the April 2009 BMC hearing as Collins urges, “the error did not influence the jury, or had but very slight effect.” See Hill, 432 Mass, at 715-16. The potential for LaGuerre to receive a favorable disposition of his BMC case in exchange for his testimony was fully before the juiy. Defense counsel introduced the docket sheet from the BMC case into evidence, which showed that ADA Fred-ette was present at the April 2009 hearing where LaGuerre’s trial was scheduled for after the likely conclusion of Collins’s trial. Attorney Curtis testified that the BMC case was continued, in part, in an attempt to secure a plea arrangement with the Commonwealth. Attorney Curtis testified that he had attempted on a number of occasions to secure a deal for LaGuerre. Defense counsel effectively cross examined Attorney Curtis, and elicited testimony that LaGuerre would be seeking a favorable deal right up until his trial. Contrast id. at 715 (noting defense counsel could not effectively cross examine witness where Commonwealth failed to disclose deal with witness). In addition, ADA Fredette questioned LaGuerre concerning whether he expected to receive consideration for his testimony. See Commonwealth v. Birks, 435 Mass. 782, 787 n.4 (2002) (stating the “hopes and expectations [of a witness to receive consideration for his or her testimony] are obviously relevant to the questions of bias and motivation and are also fair game for cross-examination . . . [t]he Commonwealth ... may itself examine a witness on this subject in order to distinguish such hopes and expectations from promises actually made”).
Importantly, defense counsel effectively cross examined LaGuerre when he denied having any expectation of a deal with the Commonwealth, and stressed that ADA Fredette “appeared on [LaGuerre’s] behalf’ at the April 2009 BMC hearing. Tr. 7-252. Defense counsel pointed out that LaGuerre was facing a mandatory minimum sentence in his BMC case, and that a deal would likely reduce or eliminate any jail time. Here, defense counsel was able to effectively show that LaGuerre may have had expectations that he would later receive consideration for his testimony. Further, in her closing argument, defense counsel reiterated these themes, and argued that ADA Fredette was “hiding” something with respect to a possible deal with LaGuerre. See Tr. 12:99-100.
Thus the trial transcripts mandate the conclusion that defense counsel effectively put before the jury the possibility that LaGuerre anticipated that he would receive consideration for his testimony, and effectively cross examined LaGuerre and Attorney Curtis “to show bias due to [LaGuerre’s] expectation of favorable treatment by the Commonwealth on his pending drug case.” See Hill, 432 Mass, at 716.
Lastly, with respect to ADA Fredette’s closing argument, Üie court finds that in light of the evidence presented at Collins’s trial, the context of the argument, and the evidence presented at the evidentiary hearing on this motion, the closing was not unfair or prejudicial. ADA Fredette argued that LaGuerre would not be receiving a deal on his drug case and that he needed to be held responsible for his actions in direct response to defense counsel’s closing in which she insinuated that ADA Fredette was “hiding” a deal with LaGuerre. See Commonwealth v. Rogers, 43 Mass.App.Ct. 782, 785 (1997) (“A prosecutor may properly respond to defense counsel's closing argument to the extent necessary to correct an erroneous impression created by defense counsel”). The evidence introduced at Collins’s trial, namely the testimony of LaGuerre and Attorney Curtis, supported ADA Fredette’s argument that LaGuerre did not receive a deal in exchange for his testimony. See Commonwealth v. Ridge, 455 Mass. 307, 330 (2009) (“In closing argument, counsel ‘may argue from the evidence and may argue fair inferences that might be drawn from the evidence’ ”). Further, this court has found that LaG-uerre was not offered a deal by the Commonwealth for his testimony. It is arguably relevant that LaGuerre pled guilty in the BMC on the same day that closing arguments were given in Collins’s trial. However, as extensively discussed above, defense counsel effectively impeached LaGuerre and put before the jury the possibiliiy that LaGuerre could receive a deal in exchange for his testimony. See Commonwealth v. Jackson, 388 Mass. 98, 112 (1982) (“while evidence that tends to show that a government witness is biased is exculpatory, ‘[w]here it is . . . cumulative . . . courts generally reject the contention that such evidence is material... so long as the defense had an adequate opportunity to impeach the witness by other means’
ORDER
For the foregoing reasons, Collins’s motion for a new trial is DENIED.

“R.A.” refers to the record appendix attached to the Commonwealth’s memorandum in opposition to Collins’s motion for a new trial.

At sidebar, defense counsel argued, “Judge, just for the record. I specifically asked for promises, rewards and inducements. The representations made to me was that this district attorney had no involvement at all in Mr. [LaGuerre’s] case. He appeared for him. He appeared to get the case continued. It’s promise, reward or inducement.” Tr. 7:250.

The docket sheet was introduced into evidence and marked as Exhibit 117. Tr. 8:19.

Defense counsel and ADA Fredette focused a large portion of their closing arguments on LaGuerre’s credibility. ADA Fredette repeatedly argued to the jury that, “you have more than enough evidence, beyond a reasonable doubt, without Pierre [LaGuerre].” Tr. 12:121.

LaGuerre testified at Collins’s trial that he thought the BMC case was “petty” because he was arrested with “nothing on [him].”