NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-596

COMMONWEALTH

vs.

PETER J. CAGGIANO, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of two counts of rape of a child aggravated by age difference, in violation of G. L. c. 265, § 23A.  On appeal, the defendant contends that (1) the judge erred in denying his motion for a required finding of not guilty on one of the counts because the grand jury did not indict him for that offense, and (2) the prosecutor's closing argument resulted in a substantial risk of a miscarriage of justice.  We affirm.

Background.  1.  Evidence presented to the grand jury.  The defendant was indicted in July 2017.  At the grand jury proceeding, the victim's grandmother testified that on May 20, 2017, after the victim left the defendant's room, the victim

told her that she was "not going to sleep with [the defendant] anymore," the defendant "touched" her and "tried to kiss [her] on [her] lips," and he was "still drunk." A police detective testified that the victim was born in 2009, and that she told her mother on May 20, 2017, that the defendant "becomes sexual when he is drinking" and he "was really drunk last night and he put his hands in my underwear and his mouth on my butt and private spot." The detective further testified that the victim's aunt overheard the victim tell her mother that the defendant "stuck his hand down her pants and licked her butt." The prosecutor played a video recording of the victim's Sexual Assault Intervention Network (SAIN) interview, in which the victim stated that the defendant had rubbed his finger inside her vagina and she felt something wet, like a tongue, moving around in her "butt hole."

The prosecutor asked the grand jury to return a bill for two charges, stating they were "both the same, that being aggravated statutory rape, the aggravating factor being the age difference." A juror asked, "We're questioning why we have two for the exact same thing. If you can explain why there's two for the exact same thing." The prosecutor responded: "The Commonwealth would be asking for indictments for each type of touching. Each type of touching is a separate count, the touching of the vagina and a touching of the buttocks would each

2

be -- the Commonwealth is alleging separate counts."  The grand jury then returned two indictments, each one stating that "on or about and between May 19-20, 2017," the defendant

> "did have sexual intercourse or unnatural sexual intercourse with a child . . . under the age of sixteen years, and there existed more than a 5 year age difference between the defendant and the child and the child was under 12 years of age, in violation of G. L. c. 265, § 23A."

2. Evidence at trial.  The case was tried in 2022.  We summarize the pertinent facts presented at the trial, viewing the evidence in the light most favorable to the Commonwealth and reserving certain details for later discussion.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

The victim testified that in 2017 she lived with her mother during the school week and stayed at the defendant's home on weekends.  The defendant lived in a house with his mother and two adult sisters.  His bedroom was on the first floor.  The victim normally slept with the defendant in his bed.

On Friday, May 19, 2017, the defendant took the victim to McDonald's, then a convenience store where the defendant purchased an alcoholic drink.  At his house, he drank alcohol on the couch.  The victim went to sleep and woke up when it was light outside.  The defendant was on the edge of the bed, texting.  He put his phone down, moved near the victim, pulled down her shorts and underwear, and put his finger in her vagina. The victim felt "frozen" and was afraid to talk.  The defendant

3

put his tongue in the victim's vagina, which felt wet and uncomfortable. The defendant then pulled up the victim's shorts and underwear, climbed over her, and went to sleep. The victim got up, went upstairs, told her grandmother that the defendant was drunk and had touched her, and asked her to call her mother.

The mother brought the victim to the hospital, where she was examined by a registered nurse who collected evidence. The mother was also interviewed by a police detective.[1] On May 26, 2017, the defendant was interviewed by a police detective and provided a buccal swab. An audio recording of the defendant's interview was played at trial. The defendant did not testify. A forensic scientist from the State Police Crime Laboratory testified that biological material recovered from the victim's underwear matched the defendant's deoxyribonucleic acid (DNA) profile.

In her opening statement, the prosecutor told the jury that the evidence would show that the defendant "put his finger in [the victim's] vagina and she felt his tongue penetrate her, as well." The judge instructed the jury that the Commonwealth had charged the defendant with "separate indictments," one involving penetration by the defendant's finger, the other involving

---

[1] The victim testified at trial that she told the detective that the defendant put his tongue in her "butthole" because, at that time, she did not understand the difference between that and her vagina.

4

penetration by the defendant's tongue, and that the jury had to be "unanimous as to which specific act constitutes the offense charged." Two verdict slips were submitted to the jury, one specifying "finger in vagina," the other specifying "tongue in vagina," and the jury found the defendant guilty on both.

Discussion. 1. Required finding of not guilty. The defendant contends that the judge erred in denying his motion for a required finding of not guilty on the count of rape involving the defendant's penetration of the victim's vagina with his tongue. The defendant asserts that, under Commonwealth v. Barbosa, 421 Mass. 547 (1995), the motion should have been allowed because the grand jury did not indict him for that offense. Rather, the defendant claims, that indictment was based on an allegation that the defendant penetrated the victim's anus with his tongue. The defendant does not challenge the denial of his motion for a required finding as to the count involving his penetration of the victim's vagina with his finger.

Article 12 of the Declaration of Rights of the Massachusetts Constitution (Article 12) "requires that no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury." Barbosa, 421 Mass. at 549. In Barbosa, the grand jury heard evidence of two separate cocaine sales on a particular

5

date, but indicted the defendant for only one offense on that date.  Id. at 548.  After the Commonwealth offered evidence of both sales, and the jury returned a general verdict of guilty, id. at 549, the Supreme Judicial Court held that it was unclear whether the sale of which the defendant was convicted was the same sale for which he was indicted.  Id. at 549-551.  This created "the very real possibility that the defendant was convicted of a crime for which he was not indicted," in violation of Article 12, id. at 551, requiring that the conviction be reversed.  Id. at 554.

Here, in contrast, the jury considered two indictments of aggravated rape, and while the indictments themselves did not contain specific language, the jury was instructed that the first indictment was based on the allegation that the defendant penetrated the victim's vagina with his finger and the second indictment was based on the allegation that the defendant penetrated the victim's vagina with his mouth.  Unlike the circumstances in Barbosa, there was no risk that the defendant was convicted for a crime that he was not indicted for.  The defendant does not contend that the two indictments were based on any acts by the defendant other than what he allegedly did on May 19-20, 2017.  Both indictments stated that the offense occurred on that date.  The defendant contends that the grand jury indicted the defendant on one count "based upon evidence

6

that he allegedly penetrated the [victim's] vagina with a finger" and another count "based upon evidence that he allegedly penetrated her buttocks with a tongue."  That supposed distinction is not set forth in the indictments, however, but rather rests on the prosecutor's ambiguous and truncated response to a grand juror's question.  We do not view that response to have enumerated, as the defendant argues, "two separate and distinct acts involving two different body parts" on which the two indictments had to be based.  Rather, it was the grand jury's responsibility to decide whether there was probable cause to find that the defendant had committed two distinct acts of "sexual intercourse or unnatural sexual intercourse" as set forth in the indictments.[2]  Reversal is therefore not required on the ground that the defendant was

_____

[2] The defendant refers in passing to "the issue of notice to the defense."  To the extent he claims that he was not on fair notice of the factual bases for the indictment, such "bald assertions of error that lack[ ] legal argument . . . [do not] rise[ ] to the level of appellate argument required by" Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) (quotations omitted).  Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011).

We further note that the defendant could have moved for a bill of particulars, but did not.  See G. L. c. 277, § 47A ("any defense or objection based upon defects in the . . . indictment . . . shall only be raised prior to trial"); Commonwealth v. Hrycenko, 417 Mass. 309, 312 (1994) (defendant waived defense that indictments did not give fair notice of charges by failing to raise the issue before trial).

7

convicted for a crime not charged by the grand jury. Barbosa,
421 Mass. at 549.[3]

Nor do we agree that either of the defendant's convictions
must be reversed because of a fatal variance between the
indictments and the proof at trial. See Commonwealth v. Semedo,
456 Mass. 1, 17 (2010). "A defendant shall not be acquitted on
the ground of variance between the allegations and proof if the
essential elements of the crime are correctly stated, unless he
is thereby prejudiced in his defence." G. L. c. 277, § 35. See
Commonwealth v. Grasso, 375 Mass. 138, 139 (1978). Here, there
was no error in how the indictments stated the elements of the
offense. As for prejudice, the indictments charged the
defendant with two counts of committing rape of a child
aggravated by age difference, and that was what the Commonwealth
sought to prove at trial. Because the indictments specified
that the alleged acts of rape took place "on or about and
between May 19-20, 2017," the defendant was sufficiently on
notice of the conduct for which he was charged. Article 12 does
not require the Commonwealth to "present to the grand jury
evidence of each theory under which the defendant may be found
guilty at trial of the crime for which he is indicted."

---

[3] While we recognize that the Commonwealth can indict a
defendant using general language, the issue in this case would
have been obviated had the Commonwealth clearly articulated the
alleged offenses in each count of the indictment.

8

Commonwealth v. Clayton (No.1), 63 Mass. App. Ct. 608, 612 (2005). Nor must there be "an exact match between the evidence presented at trial and that presented to the grand jury." Id. See Commonwealth v. Berry, 63 Mass. App. Ct. 910, 912 (2005). The evidence presented to the grand jury allowed it to find that the defendant committed two distinct acts of sexual intercourse or unnatural sexual intercourse with a child under the age of sixteen years, and at trial the evidence was sufficient to prove beyond a reasonable doubt that the defendant penetrated the victim's vagina with his finger and his tongue. Accordingly, the judge did not err in denying the defendant's motion for a required finding of not guilty. G. L. c. 277, § 35.

2. The prosecutor's closing argument. The defendant also argues that the prosecutor improperly shifted the burden of proof to him during closing argument. Because the defendant did not object the prosecutor's argument at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Desiderio, 491 Mass. 809, 815 (2023). An error during closing argument creates a substantial risk of a miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002). We have no such doubt here.

9

The defendant argues that the prosecutor shifted the burden of proof by arguing that "[t]he defense explanation for these crimes defies common sense."  We disagree.[4]  A closing argument "must be viewed 'in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial'" (citation omitted).  Commonwealth v. Barbosa, 477 Mass. 658, 670 (2017).  "[A] prosecutor may properly 'emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case,' even if he or she may thereby 'prompt some collateral or passing reflection' on the fact that the defendant has not produced certain evidence" (citation omitted).  Commonwealth v. Grier, 490 Mass. 455, 473 (2022).  Here, the challenged statement by the prosecutor was a response to defense counsel's argument that the victim "made up the story" about the defendant's assault because it was a "special weekend" for her siblings and no "special attention" was being paid to her.  A prosecutor may properly respond to the defense's argument that the victim's accusation was "made up" and that her testimony was not consistent or credible.  See Commonwealth v. Rakes, 478

---

[4] We note that the judge repeatedly instructed the jury that closing arguments are not evidence, the burden of proof is on the Commonwealth, and the defendant has no burden of proof.  We presume that the jury followed the judge's instructions.  See Commonwealth v. Williams, 450 Mass. 645, 651 (2008).

Mass. 22, 45 (2017); Commonwealth v. Rogers, 43 Mass. App. Ct. 782, 785-786 (1997).

Nor was it improper for the prosecutor to point out, in response to the defense's argument that the forensic scientist "could not tell you how" the defendant's "DNA came to be located on" the victim's underwear," that "[t]he defense does not deny that this was his DNA." Defense counsel expressly referred to it as "[the defendant's] DNA" while arguing that the DNA could have been transferred to the underwear through other means. It was not error for the prosecutor to acknowledge that point in the course of responding to the defendant's theory about how the DNA got there.

Lastly, it was not error for the prosecutor to argue that the defendant was somewhat equivocal in his denial of responsibility during his interview with the police detective days after the offense. Defense counsel began her closing argument by asserting that the defendant "walk[ed] into that police station" and said that he "didn't do any of it." She acknowledged, however, that the defendant also "questioned himself" and stated that: "I'm not saying [the victim's] lying, but I'm not saying that that's what happened either." In response, the prosecutor argued that defense counsel "can't explain what the defendant really said on May 26th, 2017, when he said, 'I'm not saying that she is lying.'" "A prosecutor is

11

entitled to comment on a defendant's statement to police and omissions therefrom" (citations omitted). Commonwealth v. Whitman, 453 Mass. 331, 348 (2009). The prosecutor may also "respond to the defense argument [and] comment on the . . . weakness of the defense, as long as argument is directed at the defendant's defense and not at the defendant's failure to testify" (quotation and citation omitted). Commonwealth v. Witkowski, 487 Mass. 675, 686 (2021). Here, the prosecutor's argument focused on the defendant's statement to the police and did not implicate the defendant's right not to testify.

Viewing all of the contested statements by the prosecutor in the context of the entire closing argument, we conclude that they permissibly conveyed the point that the weight of the credible evidence pointed toward the defendant's guilt, not that the defendant had to prove his innocence. The defendant argues that even if no one statement by the prosecutor, standing alone, is sufficient to warrant the reversal of his convictions, reversal is nonetheless warranted due to cumulative error.

Given our conclusions on the underlying alleged errors, there was no cumulative error.

Judgments affirmed.

By the Court (Walsh, Toone & Tan, JJ.[5]),

Clerk

Entered:  February 19, 2026.

---

[5] The panelists are listed in order of seniority.